Good morning, I'm David Dougherty and I represent Sheikah Latifah Al-Sabah. Sheikah Latifah Al-Sabah is the inventor of a design. This design is covered in a design patent which is essentially, that is essentially the drawing but somewhat enlarged. Today the sole issue before this court is whether or not that our position of course is that it is. And this belief is supported by 37 C.F.R. 171. 37.171 states that you must have a description of the invention. There is the description. Let me ask you, I give you here that there's copyrightable material and it's probably a clever teaching tool. The question is why is it that there was no claim to even that use on a computer format or use as with respect to some kind of board. I mean all it was is one sheet that showed on the face of it the description of the information that would go into some kind of teaching aid. Wouldn't it have been pretty simple to describe something that the teaching aid would be attached to? It would be but we believe we did and the statute required that we enable a person of ordinary skill in the art and that's very important to our argument. It's a person of ordinary skill in the art. That is in our opinion someone with a bachelor's degree in education and an understanding of teaching foreign languages. Okay so what did you enable them to do? We enabled them to make and use the invention. Right, you enabled them to use the information. Yes. In what format? In a teaching aid. Okay give me an example. Pardon? Give me an example. A teaching aid, a far out example would be a truck body. If we reproduce that on a truck body and park the truck underneath the window of a classroom, it's a teaching aid. It's something to help a student remember and that's all it is. And anyone who is skilled in the art would look at that and say that's a teaching aid. So therefore since we have fully complied with the statute. But when it was rejected, why didn't you go back and amend the application to simply identify some physical teaching aid that could be used? The patent office would have rejected that on the basis that it's a new matter. I don't believe it would be but it could have been done and I should have done it. But in this case the patent has been rejected on the basis that this is not statutory subject matter. Because as a design patent you didn't show the device to which the design is applied other than a piece of paper. Or the teaching aid is embodied in what we show. It's inherent. It would also apply if as a teaching aid you said to someone, memorize that and carry it around in your head. They can do that but no one knows exactly what is in somebody else's head. And how can that be used to help the student? Well, you put it in your head and then someone can, because it's in their head, they can speak it to someone else and tell them it should be in their head if they're any good at memorizing it. And then your patent would be able to be enforced not against an article of manufacture but against a metal process. You'd be able to sue people for infringing your design patent because they've memorized it. How could you ever communicate? Well, isn't that right? You'd have a scope of coverage of your patent that would reach beyond an article of manufacture. Well, all we wanted to cover was an article of manufacture. But instead of showing hatch marks or something like that, very simply in order to, the case law that you depend on differs from you because their design had some hatch marks that showed a little bit of depth, if you would, for the paper. That's true. But all we have to do is teach a person of ordinary skill. And a person of ordinary skill who looks at that is going to say it's a teaching aid. Okay, well, this blow-up that you have here is not even something that was identified in the application. No, but that is a duplication in a large scale. That is exactly the drawing that was shown. The person could tear the back page of the patent office, which was the drawing. But you didn't show any edge lines. You didn't say this is a teaching aid and we claim it in the format of a 12 by 14 blow-up on a poster board with the ability to present it on the side of a truck or wherever. You didn't make any of those claims. We did not. But it's smart. But you couldn't do it in a design patent. Smart. It's just that the design is shown and you're restricted from describing one wonders at the choice of a design patent rather than a utility patent. We have a utility patent that is also on appeal. Application. We did both. We covered it as a design and we covered it as a utility invention. The design depends on the Arabic script also, is that right? Yes. So it seems it could be very easily avoided. That's true. If you scramble the letters, it doesn't infringe. If you make different groups with different letters in them, that is not covered. All we've asked for is this specific design. And we believe it's inherent or it's embodied in the design. And it's clearly disclosed as a teaching aid for teaching Arabic. And that, we believe, will enable a person of ordinary skill in the art to practice, to use, and practice the invention. Which is what the statute 171 says. You must enable a person of ordinary skill in the art to make and use the same. But isn't the reason that there's an article of manufacturing requirement is that there needs to be a distinction between a design patent and a pure copyrightable material? And that the only way you come within the bounds of something that could be covered by the patent laws is if you identify an article of manufacture. Which you could have done with dotted lines or shading or even the side of a truck, as you say. So what I'm trying to understand is why you think we can simply give you sort of a design patent on some copyrightable information. Because otherwise we would have to give everybody who has a picture could be entitled to a patent. No, because we have a specific design. It is this arrangement of letters, of Arabic letters. If you just have a scrambled picture of those letters rearranged, that is not a teaching aid. It is not our teaching aid. We have only asked for a patent on this arrangement of letters as shown and described. So on your theory, if you were to prevail, there would have to be a revision of the MPEP about how examiners are going to review a design patent. Because they'll need to ask this enablement question that they're not currently asking. That could be true. That's very probably. Is that a good idea? I don't... And then we'll have litigation here in the future over whether or not the examiner was correct when the examiner said this would or would not enable. It seemed to me that it was such a simple way here to square up this application with even the cases you rely on by having shading or something like that that makes it clearer to everyone. That could have been changed. That is not something that would go around in somebody's head that would be attached to an article. That could be changed, but it is this specific design. And this arrangement that we claim as a teaching aid, if you change the arrangement of those letters... It would be a different teaching aid. It's a different design. Well, that's true with any design. We believe... If you change the design, it's a different design. That if you accept the rule of the examiner and the board, the Patent Office Trial and Appeal Board will have overruled the legislature. They will have overruled this court, who has affirmed design patents. Because any design patent, it must have a description, namely a drawing. And if you look at a drawing, anyone can imagine it in their head or visualize it in their head. So they have rejected it on the basis that every design patent ever issued is invalid. What if you asked for a design patent and all you did was lay out the ABCs? And you just put ABCDES and you said it's a teaching aid? To me, that is not a teaching aid. Why? For example, here a student can remember the one letter in the first group, the plurality of letters in the second group. That gives structure, more structure. And that can be used as a teaching aid. Well, this is a much more complex list. What you say is all it is is a list of letters. The ABCs for a toddler is just a list of letters. So I can imagine a thousand ways in which I can use the ABCs to teach a toddler their ABCs. So why isn't it that anybody who wants to patent the ABCs could do that? They could if they make a specific design that is not suggested by any prior art. And it doesn't have to be attached to anything. It doesn't have to be attached to anything and just be a series of letters. It has to be attached to something. It has to be attached to a substrate. How? For two things, there must be a substrate and there must be contrast. If you do the drawing and the contrast behind it is the exact same color, you can't see it. It's invisible. And as pointed out in our, I think, original brief, if there's no contrast, you can't see it. It's not a teaching aid. And it wouldn't be recognized as a teaching aid. It couldn't be used as a teaching aid. We have a specific arrangement of letters. And that's all we're asking to cover. And we show, if you look at the patent application, the drawing, the design is embodied in the drawing. It's inherent from the drawing. Mr. Daugherty, you told us that you also have a utility patent application. I assume also a copyright application. No, we did not file the copyright. Well, it doesn't have to be filed anyway. I appreciate that. Okay. Thank you, Mr. Daugherty. It was my mistake. Well, I don't know. I don't know. It doesn't have to be filed until it's infringed. Thank you, Mr. Daugherty. Thank you. Thank you. Ms. Lateef. May it please the Court, I think my co-counsel said it best when he said that his design must be attached to something. And I think a better way to phrase that is, under 35 U.S.C. 171, a design patent must be applied to or embodied in an article of manufacture. If you look at the title of this application and the claim, it generally describes a teaching aid for teaching Arabic. But then when you turn to the drawing, Al-Sabah has not shown her design applied to a teaching aid. Looking at the drawing, the design is not applied to any article of manufacture. It's sort of an abstract design or a picture, standing alone. And this Court's predecessor, Henry Schnell… Yes, that argument that it's on a piece of paper doesn't work either. Because, again, if you look at the title of the application and you look at the claim of the application, there is no mention of paper as required under 37 CFR 1.153. And then if you turn to the drawing, the drawing doesn't show the claim design applied to paper. Rather, paper is just the median that Al-Sabah filed her application with the USPTO. So we're just missing a few dotted lines or maybe a little bit of shading. Is that what you're saying? Well, there are plenty of ways it could have been done. I'm basically saying there's no way for the office to look at this design and determine what the article of manufacture is. It could be done with some dotted lines. It could be done with different elevational views. It can be done with shading. There's probably numerous ways that Al-Sabah could have shown the USPTO how this is applied to some article of manufacture. But that wasn't done here. But once you put in the dotted lines, you're limited to the particular article of manufacture that you've applied it to. Isn't that correct? Let's say they put it on the side of a truck. So there are dotted lines showing the truck with this design on it. If you change the truck to a lawnmower, for instance, you have no protection. You could file a design patent for a lawnmower, but in that particular application, you wouldn't. No, because your application was directed to that particular article of manufacture. But, however, if you wanted to have your design applied to multiple articles of manufacture, you can do that. You'd have to list them in the title. You'd have to list them in the claim. And you'd have to provide drawings that let the public know the various ways that you are applying your design. If it's a schoolroom, a teaching aid, how do you demonstrate by dotted lines that it's somewhere in the schoolroom? Well, you'd have to select an article of manufacture. I mean, somewhere in the schoolroom, we'd have to pick an article of manufacture. So if you wanted, let's say, a poster, I'm selecting something. But it could be any article of manufacture. So you show it attached to a support the way it is there, and you now have the design decorating the support. I'm looking at the design, adding its design to the rack that it's standing on. Then you would be limited if you said, my teaching aid is on that particular type of a support. That's how we show it. Well, then you'd be limited. It isn't your point that there's a public notice factor here to the claims, and the applicant is supposed to tell the world the article or articles to which the design will be attached. That's correct, Your Honor. So there would be an infringer note when they're going to be in trouble. Right, that's correct, Your Honor. And the office isn't in the habit of patenting abstract designs. And we need to understand what your design is applied to. Look at the 541 patent at that A101 in the appendix. I don't really understand why that. Frankly, it seems to show less information rather than more. Why is that patentable, whereas this one is not? Well, Your Honor, if you look at A101, for example, you can see shading, which kind of shows that it's embodied within something. And if you turn to 102 and you look at figures 4 and figures 5, it's showing you different viewpoints of the article of manufacture as opposed to a design. And then again, if you look at... I don't understand that, though. Tell me what the article of manufacture is in this case. Well, the examiner found it to be a game board. And so if you're looking at figure 4 or figure 5 and it's turned, then you're looking at what seems to be the side elevational view in figure 4. And figure 5 is a front elevational view. So if you can imagine, you know, like a chute and ladder or a thin game board, that's what you would be looking at. And even in figure 2, what are the dotted lines on the far right? Figure 2, that looks to be... It's on page 103. Yeah, that seems to be some shading to show surface. The three dots, right? Two dots. Oh, I see what you're talking about. On the far right side of the drawing. Yes. You have a broken line in several places. Yeah, I see what you're talking about. I'm not 100% sure what those little lines are showing, but in design patents, when you have broken lines, you're showing environment. You're showing a part of the article of manufacture that you're not claiming in the design, so it's giving environmental perspective. I don't understand what these little shading marks are in any of these figures. What does that add? To show surface. Like there's maybe a different texture than the design. It's on something. To show that it is sitting on something. So all we had to do was put a little design, a little shading in those lists? Well, what Elphaba had to do was somehow let the USPTO know what the article of manufacture was. Well, did the examiner just simply explain that? Why didn't the examiner work with him to understand so that he could understand what it is he needed to do? Well, the examiner made a rejection, letting them know that it wasn't applied to an article of manufacture, and the applicant can then easily have offered something up as an article of manufacture. As we stand here today, the offer was a truck. Does the MPEP give any guidance about shading and that sort of thing? It does, Your Honor. What does the MPEP say to help out applicants to know how to avoid this problem? Well, the MPEP goes into a lot of discussion about the fact that it needs to be applied to an article of manufacture. And I'm just trying to find a section. I know that it talks about how to show your drawings. That's what I was curious about.  Just give me one second, Your Honor. Your Honor, I'm not 100% sure what section of the MPEP that is at the moment, but what I can say is that there is, in our regulations, we also talk about how you can show your drawings properly in terms of following broken lines or dotted lines or solid lines under 37 CFR 1.152. Yes, 37 CFR 1.152. And what's it say? So it says, The design must be represented by a drawing that complies with the requirements of 1.84, must contain a sufficient number of views to constitute a complete disclosure of the appearance of the design, and then to get to your point about lining, it says solid black surface shading is not permitted except when used to represent the color black as well as color contrast. Broken lines may be used to show visible environment structure, but may not be. It goes on. I can read it, but it's very long. It's talking about how you can draw your design so that they comply. But what I'm getting at is what happens to those regulations if we rule against the office here? I mean, it seemed to me that the rejection by the examiner was because I can't tell what type of article you're trying to attach this to. Please do something, and you have regulations that tell you how to do it. Right? Yes, Your Honor. What's going to happen in the BDO if we rule in favor of the appellant here, and you say you don't have to worry about any of these things? Well, I guess we'd have to go back and figure out how to respond, depending on the ruling and how it's raised, but that would be a problem because it doesn't just come from our regulations. It also comes from the statute. I mean, the statute tells you that you have to apply your design to an article of manufacture. The regulations explain how it is that you can do that. So it would be a bigger problem than we'd have to figure out how to reinterpret the statute as well. And so just in conclusion, because Al-Sabah's design is not applied to a manufacturer, and it is an article of manufacture, and it is just a design standing alone, which is not in compliance with 35 U.S.C. 171, I respectfully ask that this Court affirm the Board's decision. Well, what about Mr. Al-Sabah's argument that a patent has to be enabled? And if this patent, if a person of ordinary skill would enable this patent by using it as an article of manufacture, by putting it on an article of commerce, that satisfies the test. And that's what I understand to be his argument. Right, but the problem is before we even get there, we have to figure out whether or not this is patentable. And we can't, we didn't even touch on enablement because the first rejection the examiner made is that this is not a patentable design because it is not applied to an article of manufacture. So you're saying you can't use the enablement requirement to shoehorn yourself into patentable subject matter. Yes, Your Honor. You know, you can look at this and immediately say this is not patentable. We do not protect picture standing alone via design patent. We do not protect abstract ideas at the USPTO. Okay, anything else from the subpoena? Okay, thank you. Thank you, Your Honor. Thank you. Mr. Darley, you waived rebuttal. Are you content with that? Do you need the last word? I know that you said that you said you're pleased. Okay, the case is taken under submission. That concludes this morning's argument.